UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| COURTENAY STARKS | CIVIL ACTION |
|---|---|
| VERSUS | NO: 17-11734 |
| SUPERIOR ENERGY SERVICES, LLC | SECTION: "A" (5) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Partial Dismissal and Motion for Summary Judgment (Rec. Doc. 6)** filed by Defendant, Superior Energy Services, LLC. Plaintiff Courtenay Starks opposes the motion. The motion, submitted for consideration on March 7, 2018, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I.     Background**

This is an action under Title VII and the Louisiana Anti-Discrimination Law for a hostile work environment (race) and retaliatory discharge. Plaintiff Courtenay Starks, who is African-American, was employed at Defendant's valve shop in Belle Chasse, Louisiana from February 2010 through February 2016. Plaintiff alleges that Frank Cherry (white supervisor), Max Schneck (coworker), and Carnell Mediamass (coworker) subjected him to a racially discriminatory workplace throughout his six-year employment with Defendant. Sometime in 2013, and then again in November 2015, Plaintiff made a complaint of race discrimination to Defendant's Human Resources department but Defendant failed to take any action to stop the racially abusive treatment. Plaintiff

contends that Cherry and Schneck retaliated by continuing to harass him after he complained about the abuse.

In February 2016 Defendant began to relocate the shop operation and lay off the employees at the Belle Chasse facility. Plaintiff was laid off on February 12, 2016, but so were Cherry and the other harassing co-workers at the shop. Plaintiff contends, however, that his lay off was retaliatory because he overheard Cherry's supervisor ask the person administering the lays offs to "do him a favor" and "get rid" of Plaintiff. (Rec. Doc. 1, Complaint ¶ 20).

Plaintiff filed a charge of discrimination with the EEOC claiming retaliatory discharge and workplace harassment. This lawsuit followed.

Defendant now moves for summary judgment arguing that Plaintiff released the claims at issue in this lawsuit when he left Defendant's employ.[1]

## II. Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)

---

[1] Defendant's motion is actually a motion to dismiss and for summary judgment. The motion to dismiss, which comprises a significant portion of Defendant's briefing, relates to a purported claim for constructive discharge from unapplied-for jobs. Defendant asserts that no such claim exists as a matter of law, and that if it did, Plaintiff did not exhaust it with the EEOC. In his opposition, Plaintiff has clarified that he did not intend to plead a separate constructive discharge claim based on not being hired into a job for which he did not apply (Rec. Doc. 11, Opposition at 2). Therefore, the sole issue presented by Defendant's motion is whether Defendant is entitled to summary judgment based on the release.

(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Exhibit B-1 to Defendant's motion is a Confidential Separation and Release Agreement that Plaintiff executed on February 12, 2016. (Rec. Doc. 6-5 pp. 3-7). Paragraph 2 of the Release is a waiver and release in favor of Defendant "from any and all claims, demands, causes of action, lawsuits and liabilities of whatever kind or nature, known or unknown, asserted or unasserted, that may have arisen prior to or that may exist as of the date of EMPLOYEE's execution and acceptance of this AGREEMENT for any damages, costs, fees (including attorney's fees), wages, salary, back pay, front pay, liquidated damages, penalties, or any other compensation or benefits except as expressly provided under this AGREEMENT." The consideration offered to Plaintiff in exchange for the release was $2,256.00.

According to Plaintiff, he was first given the Release at the time he learned that he was being laid off. (Rec. Doc. 11-1, Declaration ¶ 2). Plaintiff was given until February 19, 2016, to execute the agreement in exchange for the $2,256.00 but he signed the document that same day.

Plaintiff was having doubts, however, about accepting the agreement and taking the money, so he drove to Lafayette, Louisiana to revoke the agreement. Plaintiff was concerned that if he executed the Release he would not be able to bring his discrimination and retaliation claims against Defendant. (*Id.* ¶ 7). Plaintiff consulted with an attorney (not his current counsel) and he performed Google internet searches to determine the difference between an "agreement" and a "contract." Plaintiff performed this specific search because Defendant's HR Manager, Thomas LaFleur, told him that the release was an agreement, not a contract, and therefore "no big deal." (*Id.* ¶ 7).

Based on his internet research and the advice that the attorney gave him, Plaintiff decided to revoke his revocation and execute the Release because he really needed the money after losing his job. (*Id.* ¶ 9). Defendant paid Plaintiff the $2,256.00, which he is prepared to repay if he is allowed to pursue this case. (*Id.* ¶ 12).

The interpretation and validity of a release of claims under Title VII is governed by federal law.[2]  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (citing *Williams v. Phillips Petr. Co.,* 23 F.3d 930, 935 (5th Cir.1994); *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986)). A release of a Title VII claim is valid only if it is

---

[2] Neither party has suggested that the state law discrimination claim should be analyzed under a separate standard.

"knowing and voluntary." *Smith*, 298 F.3d at 441 (quoting *Rogers,* 781 F.2d at 454). In determining whether a release was knowingly and voluntarily executed, this circuit has adopted a "totality of the circumstances" approach. *Id.* (citing *O'Hare v. Global Natural Res.,* 898 F.2d 1015, 1017 (5th Cir.1990)). The employer bears the burden of establishing that its former employee "signed a release that addresses the claims at issue, received adequate consideration, and breached the release." *Id.* (citing *Williams,* 23 F.3d at 935). It is then incumbent upon the former employee to "demonstrat[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.*

To determine whether the former employee has met the burden of establishing a defense to the validity of the release, the court examines the following relevant factors: (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of the plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *Id.* (citing *O'Hare,* 898 F.2d at 1017). In determining whether a release was knowingly and voluntarily executed, federal law requires that a valid waiver is not to be "lightly inferred." *Rogers*, 781 F.2d at 454-55 (citing *Watkins v. Scott Paper Co.,* 530 F.2d 1159, 1172 (5th Cir.1976)).

**III. Analysis**

Defendant has met its burden of establishing that Plaintiff signed the Release.

Unarguably, the scope of the Release encompasses the claims asserted in this lawsuit. The Court is persuaded that $2,256.00 was adequate consideration for the release.[3] Plaintiff worked for $14 per hour at Defendant's shop and was entitled to no other benefits or payments upon his separation. Plaintiff did not have a charge pending with the EEOC or any other pending legal claims when he separated from Defendant. In other words, Plaintiff did not accept the payment in settlement of pending litigation. Thus, the consideration given for the release was not only adequate but it exceeded any other benefits to which Plaintiff was otherwise entitled under the law.[4]

Further, the Court is persuaded that the amount of time that Plaintiff had to consider the decision to sign the release was adequate and not indicative of duress. Plaintiff was given seven days to make a decision. Even though Plaintiff initially signed the document immediately, he was later permitted to revoke his acceptance. During the revocation period Plaintiff consulted with an attorney and performed his own internet research. That Plaintiff's financial situation motivated him to act expeditiously on the last day of the acceptance period to avoid forfeiting the guaranteed payment does not suggest that Plaintiff was not given sufficient time to carefully consider his options.

---

[3] The consideration of $2,256.00 was the gross amount before taxes. The net amount actually deposited into Plaintiff's account was $1,442.77. (Rec. Doc. 6-5 Exhibit B, LaFleur Declaration ¶ 7).

[4] The Court does not discount the adequacy of the consideration by speculating as to what recovery Plaintiff could have obtained in this lawsuit, if any. Employment discrimination cases are difficult to prove and not infrequently the conduct at issue does not rise to the level of being actionable regardless of the indignity that the employee perceived when being subjected to it. In fact, Plaintiff had tried speaking to lawyers about his workplace situation before he was laid off but he could not find anyone to take his case. (Rec. Doc. 11-1, Starks Declaration ¶ 6).

In support of his contention that he did not "knowingly and voluntarily" execute the Release, Plaintiff points out that he struggled in school and that he is not versed in business matters or legal contracts. Plaintiff argues that the release lacks clarity because it uses a lot of legalese.

The facts surrounding Plaintiff's execution of the Release belie the assertion that his lack of sophistication or the wording of Paragraph 2 of the Release rendered his involuntary. Plaintiff drove to Lafayette, Louisiana for the express purpose of revoking his consent to the agreement. According to Plaintiff, while in Lafayette LaFleur tried to talk him out of it but Plaintiff persisted in the revocation because he was concerned that he would not be able to bring his claims for discrimination and retaliation. (Rec. Doc. 11-1, Starks Declaration ¶ 7). After the revocation, Plaintiff consulted with an attorney about the release so he obviously understood the import of what he was being asked to sign. Plaintiff claims that he came away from that consultation believing that he could accept the money from Defendant and still pursue his claims. Whether Plaintiff simply misunderstood the lawyer or received bad legal advice is not clear.[5]

Further, Plaintiff has not demonstrated that fraud or undue influence by Defendant's personnel played a role in his ultimate decision to revoke his revocation and accept the terms of the Release. Plaintiff persisted in revoking his consent even after LaFleur downplayed the significance of the Release and made the observation that the release was an agreement and not a contract. It was not incumbent upon LaFleur to

---

[5] Plaintiff cannot recall the name of the lawyer with whom he met or his phone number. (Rec. Doc. 11-1, Starks Declaration ¶ 6).

affirmatively advise Plaintiff as to how the Release would impact a subsequent lawsuit—that's why Plaintiff sought help from an attorney. Plaintiff obviously took these precautions because he believed or hoped that he had viable legal claims even though he had consulted with lawyers in the past who would not take his case.[6]

In sum, the Court is persuaded that the totality of the circumstances demonstrates that Plaintiff knowingly and voluntarily released the chance to pursue the claims now at issue in this lawsuit in exchange for the more certain outcome of the monetary consideration that Defendant offered him. At the least, Plaintiff has failed to create an issue of fact as to the knowing and voluntary nature of the Release. Defendant is entitled to judgment as a matter of law.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Dismissal and Motion for Summary Judgment (Rec. Doc. 6)** filed by Defendant, Superior Energy Services, LLC is **GRANTED**. The complaint in this matter is **DISMISSED** with prejudice.

March 20, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[6] The Court infers from Plaintiff's declaration that it was more than one occasion in the past when he had tried unsuccessfully to find a lawyer to pursue his race-based claims. It is not unreasonable to assume that this would have been something that Plaintiff considered when he opted to execute the Release in exchange for the monetary consideration being offered.